**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

**Kristi Grossholz,**

**Plaintiff,**

**-vs-**

**The East Ohio Gas Company,**

**Defendant.**

**Case No. 1:25-cv-02675**

**JUDGE PAMELA A. BARKER**

**MEMORANDUM OPINION & ORDER**

Currently pending before the Court is Defendant The East Ohio Gas Company's ("Defendant") Motion to Dismiss Plaintiff's Amended Complaint (the "Motion") (Doc. No. 7.) Plaintiff Kristi Grossholz ("Plaintiff") filed a Brief in Opposition to the Motion (the "Opposition"), to which Defendant filed a Reply in Support of the Motion (the "Reply"). (Doc. Nos. 8, 9.) For the following reasons, Defendant's Motion is denied.

## I. Background

"Plaintiff was hired by Defendant on or about November 6, 2006, as a customer service representative where she answered customer calls and scheduled maintenance visits." (Doc. No. 6, ¶ 5.) "By November 6, 2007, Plaintiff had worked in excess of 1250 hours of work over the preceding twelve months for [Defendant] and became eligible for FMLA leave." (*Id.*, ¶ 6.) "Grossholz suffered from and continues to suffer from several medical conditions that required the use of intermittent FMLA leave." (*Id.*, ¶ 7.) Defendant "approved Plaintiff's FMLA leave requests which were renewed every six months." (*Id.*, ¶ 8.) Plaintiff "would notify her supervisor of her scheduled appointments in order to minimize the disruption to the office staffing." (*Id.*, ¶ 9.) "Plaintiff performed her responsibilities in an excellent manner earning step raises pursuant to the collective bargaining

agreement." (*Id.*, ¶ 10.) "She also held several positions in the union that represents a significant percentage of [Defendant's] hourly work force." (*Id.*, ¶ 11.) "Plaintiff reported her use of FMLA leave through the company's payroll record keeping." (*Id.*, ¶ 12.)

"In July 2023 Rachel Ray Przybojewski, manager of the integrated service center where Plaintiff was employed, believed [Plaintiff] and several other employees were abusing their FMLA leave." (*Id.*, ¶ 13.) "As a result, [Defendant] commenced a detailed analysis of these employee[s'] use of FMLA." (*Id.*, ¶ 14.) "On or about March 29, 2024, Plaintiff requested a copy of her FMLA leave use and approvals from UNUM, the FMLA third party administrator retained by Defendant." (*Id.*, ¶ 15.) "On or about April 1, 2024, Lori Gaekle, a manager, supplied Plaintiff with this information." (*Id.*, ¶ 16.) "Plaintiff compared the UNUM supplied FMLA approvals with her SAP file which contained the coding for her leave she had taken." (*Id.*, ¶ 17.) "Her file revealed that her leave had been properly coded for FMLA leave." (*Id.*) "Ultimately the FMLA misuse investigation was closed by Defendant in May 2024, finding there was no improper use of FMLA leave." (*Id.*, ¶ 18.)

"Prior to the announcement that the above-mentioned investigation had concluded, Przybojewski and General Manager Bob Metzinger authorized surveillance of Plaintiff by a private investigation firm, InfoQuest." (*Id.*, ¶ 19.) "Przybojewski made the decision to initiate the surveillance due to her continued belief that Plaintiff had misused her FMLA leave." (*Id.*, ¶ 20.) "This surveillance was ordered by Defendant in retaliation for [Plaintiff's] legitimate use of FMLA leave." (*Id.*, ¶ 21.) Plaintiff "was not informed of Defendant's surveillance which began on or about April 30, 2024, and continued through July 5, 2024." (*Id.*, ¶ 22.)

"Plaintiff had filed a charge with the National Labor Relations Board through her union for

harassment and interference with her union activities." (*Id.*, ¶ 23.) The Collective Bargaining Agreement between Defendant and Gas Workers Local Union G-555 contained a provision "permitting dependent care leave for use when an employee had issues with a minor child." (*Id.*, ¶ 24.)

"On May 2, 2024, Plaintiff had an unanticipated serious issue regarding her daughter that required an immediate meeting with her child." (*Id.*, ¶ 25.) "As a result, she requested and was granted use of Dependent Care Leave." (*Id.*) Plaintiff's "daughter's emergency condition qualified for FMLA leave in order to determine the specifics of her problem." (*Id.*, ¶ 26.) "At that time Defendant failed to advise Plaintiff that her request for leave pursuant to the Dependent Leave provisions also could qualify for FMLA leave." (*Id.*, ¶ 27.)

Plaintiff "left work and proceeded to her home where she met with her daughter briefly." (*Id.*, ¶ 28.) "Her daughter left home only to return a short time later where she met with her mother and then left again." (*Id.*) "Later that afternoon Plaintiff left her home and drove to the University of Akron to discuss this situation with her husband who is employed at the University." (*Id.*, ¶ 29.)

"On May 13, 2024, the Union was notified that Plaintiff had been cleared of any wrongdoing with respect to the 2023 abuse of leave benefits." (*Id.*, ¶ 30.) "Despite being cleared of FMLA misuse, on May 14, 2024, Przybojewski called [Plaintiff] into a meeting questioning her recent use of FMLA leave on April 5, 2024, and the May 2, 2024, use of dependent care leave." (*Id.*, ¶ 31.) "Plaintiff was also questioned about her 24 days of partial absences since January 1, 2024." (*Id.*) "All of these partial absences were excused intermittent FMLA leave." (*Id.*) "Przybojewski's intent in again questioning Plaintiffs FMLA use in January, April and May 2024 was in retaliation for her continued proper FMLA use." (*Id.*, ¶ 32.)

"On July 16, 2024, Plaintiff was called into a Type IV disciplinary meeting where she was terminated for allegedly abusing dependent care leave." (*Id*., ¶ 33.) "In this meeting Defendant did not mention that [Plaintiff's] leave on May 2, 2024, qualified for FMLA leave." (*Id*., ¶ 33.)

"After her termination Plaintiff filed a timely grievance disputing her termination." (*Id*., ¶ 34.) "As part of the grievance process[,] [Plaintiff] obtained company records that had coded some 14 absences as Sick Leave. (*Id*., ¶ 35.) "All of these dates coincided with Plaintiff's use of FMLA leave." (*Id*.) Defendant's "management altered the leave codes in order to justify an investigation into [Plaintiff's] use of leave." (*Id*., ¶ 36.) "In addition, during the Step II grievance hearing Przybojewski admitted that she ordered the 2023 investigation of Plaintiff's FMLA use as well as the spring surveillance by the private investigator for the same reasons." (*Id*., ¶ 37.) "The surveillance of Plaintiff failed to establish any misuse of FMLA leave by [Plaintiff]." (*Id*., ¶ 38.) "Plaintiff['s] grievance over her termination resulted in an Arbitrator's finding that [Plaintiff] did not misuse dependent car[e] leave and overturned her termination." (*Id*., ¶ 39.) "Plaintiff never misused her FMLA leave and there was no basis for any of Przybojewsli['s] actions as set forth above except FMLA retaliation." (*Id*., ¶ 40.)

According to Plaintiff, "Defendant used the guise of Plaintiff's legitimate dependent care leave to terminate her in retaliation for her proper use of FMLA leave over several years." (*Id*., ¶ 42.) Plaintiff asserts that Defendant's conduct "violates the provisions of 29 C.F.R. § 825.205(a)[,] which permits the use of FMLA leave for treatment of a serious illness." (*Id*., ¶ 44.) Specifically, she contends that Defendant's decision to terminate Plaintiff "constitutes retaliation for Plaintiff's use of her FMLA benefits in violation of 29 U.S.C. § 2615(a)(2) and 29 C.F.R. § 825.301(e)" and its failure to inform Plaintiff that her leave on May 2, 2024, when an emergency arose involving her daughter,

qualified for FMLA leave "constitutes interference with [her] FMLA rights in violation of § 2615(a)(1)." (*Id.*, ¶¶ 44-46.)

**II. Procedural History**

On December 10, 2025, Plaintiff filed her Complaint, that set forth a claim for retaliation under the Family Medical Leave Act ("FMLA"). (Doc. No. 1, ¶ 1.) On February 6, 2026, Defendant filed its Motion to Dismiss the Complaint. (Doc. No. 4.) Plaintiff then filed the Amended Complaint on February 18, 2026, wherein she reasserted her cause of action for FMLA retaliation ("Count I") but added an additional claim for FMLA interference ("Count II"). (Doc. No. 6, ¶¶ 45-46.) On March 2, 2026, Defendant filed the Motion. (Doc. No. 7.) On March 16, 2026, Plaintiff filed the Opposition and on March 30, 2026, Defendant filed its Reply on March 30, 2026. (Doc. Nos. 8, 9.) Accordingly, the Motion is ripe for review.

**III. Standard of Review**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). For purposes of Rule 12(b)(6), "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citation and quotation marks omitted).

The measure of a Rule 12(b)(6) challenge — whether the Complaint raises a right to relief above the speculative level — "does not 'require heightened fact pleading of specifics, but only

enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. National Collegiate Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting in part *Twombly,* 550 U.S. at 555–56). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting in part *Erickson v. Pardus*, 551 U.S. 89 (2007)). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

## IV. Analysis

The FMLA, codified at 29 U.S.C. § 2601 *et seq.*, "guarantees 'eligible employees' twelve weeks of unpaid leave during any twelve-month period for certain family or medical events, including childbirth." *Staunch v. Cont'l Airlines, Inc.*, 511 F.3d 625, 629 (6th Cir. 2008) (citing 29 U.S.C. § 2612(a)(1)). If an employee is approved for a period of FMLA leave, then the employer must "restore[ ] ... the employee to the position of employment held by the employee when the leave

commenced' and the period of FMLA leave 'shall not result in the loss of any employment benefit accrued prior to the date on which the leave commenced." *Snyder v. U.S. Bank Nat'l Ass'n*, 2022 WL 17330172, at *2 (6th Cir. Nov. 29, 2022) (quoting 29 U.S.C. § 2614(a)(1)(A)); *Kinds v. Ohio Bell Tel. Co.*, 724 F.3d 648, 652 (6th Cir. 2013) (quoting 29 U.S.C. § 2614(a)(2)). "But the FMLA does not entitle an employee to any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave." *Snyder*, 2022 WL 17330172, at *2 (quoting 29 U.S.C. § 2614(a)(3)(B)) (internal quotation marks omitted).

The FMLA prohibits qualifying employers from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise any right provided" by the FMLA. *Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 577 (6th Cir. 2007) (citing 29 U.S.C. § 2615(a)(1)). An employer also cannot "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]." 29 U.S.C. § 2615(a)(1)-(2). The Sixth Circuit "recognizes two distinct theories for recovery under the FMLA: (1) the 'entitlement' or 'interference' theory arising from 29 U.S.C. § 2615(a)(1); and (2) the 'retaliation' or 'discrimination' theory arising from 29 U.S.C. § 2615(a)(2)." *Blank v. Nationwide Corp.*, 2021 WL 3469187, at *5 (6th Cir. Aug. 6, 2021). In the Motion, Defendant moves to dismiss both Plaintiff's FMLA retaliation and FMLA interference claims. (Doc. No. 7, PageID# 38.)

**A. FMLA Retaliation**

To state a claim for retaliation for exercising or attempting to exercise FMLA rights, "[the plaintiff] must establish that: (1) she was engaged in protected activity; (2) her employer knew she was engaged in the protected activity; (3) her employer took an adverse employment action against

her; and (4) there was a causal connection between the protected activity and the adverse employment action." *Milman v. Fieger & Fieger*, 58 4th 860, 867 (6th Cir. 2023) (quoting *Donald v. Syba, Inc.*, 667 F,3d 757, 761 (6th Cir. 2012). "To survive a motion to dismiss, [a plaintiff] must allege sufficient facts for us to infer that the defendants retaliated against her because of her protected FMLA activity, but she need not plead a prima facie case of retaliation." *Ahmed v. Hamtramck Pub. Schs.*, 178 F.4th 975, 981 (6th Cir. 2026) (citing *Keys v. Humana, Inc.*, 684 F.3d 605, 609–10 (6th Cir. 2012)).

In the Motion, Defendant argues that Plaintiff has failed to satisfy this third element, contending that "Plaintiff has [] failed to allege a causal connection between her use of FMLA leave and her termination." (Doc. No. 7, PageID# 43) (cleaned up). To support this argument, Defendant asserts that (1) its investigation concluded that Plaintiff did not misuse her FMLA leave and that it had fired her for misusing Dependent Care leave rather than FMLA leave; (2) it has a right to investigate its employees' use of FMLA leave; (3) Plaintiff cannot show temporal proximity between her exercise of FMLA rights and her termination because more than fourteen weeks passed between April 5, 2024, the date Plaintiff alleged in her Amended Complaint that she last used FMLA, and July 16, 2024 when she was terminated from her employment with Defendant; and (4) even if she could demonstrate temporal proximity, temporal proximity alone is insufficient to establish an FMLA retaliation claim. (*Id.*, PageID#s 43-46.)

In her Opposition, Plaintiff does not take issue with Defendant's decision to investigate but points out that Defendant's investigator continued to surveil her even after it was revealed that she was cleared of the FMLA abuse allegations. (Doc. No. 8, PageID# 54-58.) She also argues that the date of her protected activity was when she was cleared of FMLA abuse on May 13, 2024 and

therefore, only two months and two days lapsed between the date of her protected activity and the date of July 16, 2024 when she was terminated and therefore, temporal proximity exists; and (2) temporal proximity alone is sufficient to support a claim for FMLA retaliation. (*Id.*)

In the Reply, Defendant argues that Plaintiff's assertion that a little over two months passed between her protected activity and her termination fails because being cleared of FMLA abuse allegations does not constitute protected activity and even if this Court accepted Plaintiff's assertion that it does, the lapse in time of approximately two (2) months is insufficient to sustain a claim for retaliation. (Doc. No. 9, PageID# 66-68.) Defendant argues that "[m]ost generously, the last possible instance of 'protected activity' occurred on May 2, 2024, the day Plaintiff alleges she was entitled to, but did not receive, FMLA leave to care for her daughter's unidentified condition." (*Id.*, PageID# 67.) Also, Defendant asserts that Plaintiff was not terminated for FMLA abuse, but because as Plaintiff alleges in paragraph 33 of her Amended Complaint, Defendant was terminated for allegedly abusing dependent care leave. (*Id.*, PageID# 68.).

This Court will analyze whether Plaintiff pleads facts sufficient to raise the plausible inference that Defendant terminated her at least in part because she exercised her rights under the FMLA.[1] "[T]emporal proximity between protected activity and adverse employment action can establish causation for a FMLA retaliation claim." *See Ahmed*, 178 F.4th at 981-82 (citation omitted). Defendant argues that Plaintiff cannot show temporal proximity because Plaintiff's last use of FMLA leave on April 5, 2024 constitutes her protected activity and more than fourteen weeks elapsed before she was terminated on July 16, 2024. (Doc. No. 7, PageID# 43.) Plaintiff disagrees and argues that

[1] As this Court has already noted, Plaintiff need not plead a prima facie case for retaliation to survive a motion to dismiss. *See Ahmed*, 178 F.4th at 981-82 (citation omitted).

temporal proximity does exist because there was a two month and two-day time lapse between Plaintiff being cleared of FMLA misuse on March 13, 2024 and her termination on July 16, 2024.[2] (Doc. No. 8, PageID# 55.) This Court need not reach the issue of whether notification of being cleared of FMLA misuse that occurred on May 13, 2024, or Plaintiff being entitled to but not receiving FMLA leave on May 2, 2024 to care for her daughter constitutes protected activity. For, assuming that Defendant is correct in arguing that the "protected activity" that Plaintiff engaged in for purposes of evaluating temporal proximity was the last day she used FMLA leave or April 5, 2024, the Court finds that the lapse of fourteen weeks is sufficient to a plausible inference that Defendant acted with a retaliatory motive.

The Sixth Circuit has held "in the analogous ADA retaliation context, that [courts] 'may still draw an inference of causation where the defendant took advantage of its first meaningful opportunity to retaliate against the plaintiff, even if that opportunity did not arise until several months after the plaintiff's protected conduct.'" *Ahmed*, 178 F.4th at 983 (quoting *Kirilenko-Ison v. Bd. of Educ. of*

---

[2] Defendant argues that temporal proximity is insufficient to show causal connection, but Plaintiff disagrees. (Doc. No. 7, PageID# 44; Doc. No. 8, PageID# 55.) Whether temporal proximity in the retaliation context can, on its own, demonstrate causation, has at times been unclear in the Sixth Circuit. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523–25 (6th Cir. 2008) (collecting cases). Generally, "case law from this circuit cautions about the permissibility of drawing an inference of causation from temporal proximity alone." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010) (citing cases). But "[t]his Circuit has embraced the premise that in certain distinct cases where the temporal proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise." *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 283 (6th Cir. 2012) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir. 2004)). "In such cases, the adverse employment action is often taken just days or weeks from when the employer learns of the employee's protected activity." *George v. Youngstown State Univ.*, 966 F.3d 446, 460 (6th Cir. 2020) (citing cases).

In *Seeger*, for example, the Sixth Circuit held that "the nearness in time between [plaintiff's] return from FMLA leave and his termination — three weeks after his reinstatement and less than two months after he first notified [his employer] of his medical leave — suffices in these circumstances to meet the low threshold of proof necessary to establish a prima facie case of retaliatory discharge." *Seeger*, 681 F.3d at 283; *see also Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007) ("Here, Regis terminated Bryson on March 10, 2004, three months after Bryson requested FMLA leave, and the very day that she was scheduled to return to work. We have previously held that proximity in time between the protected activity and the adverse employment action may constitute evidence of a causal connection.")

*Danville Indep. Schs.*, 974 F.3d 652, 665 (6th Cir. 2020)).

In *Ahmed*, the plaintiff – a school district superintendent - had taken a three-month temporary leave of absence under the FMLA and as she prepared to return to work, the school district informed her that she was prohibited from returning while it investigated alleged misconduct. The plaintiff filed a motion seeking leave to file a Fourth Amended Complaint to include an FMLA retaliation claim against the school district and the school board members. However, the district court denied the plaintiff's motion as futile and then granted the motions to dismiss the original complaint filed by defendants and dismissed all the plaintiff's claims with prejudice.

When analyzing futility and in ultimately reversing the district court's decision denying the plaintiff the opportunity to file her Fourth Amended Complaint, the Sixth Circuit asked whether the plaintiff had alleged a plausible claim of retaliation, rather than a prima facie case and then considered whether the plaintiff had plead sufficient facts to raise the plausible inference that the school district and board members had placed her on administrative leave at least in part because she exercised her rights under the FMLA.

In answering "yes" to these questions and reversing the district's court's denial of the plaintiff's leave to amend her complaint and proceeding to evaluate the motions to dismiss the original complaint, the Sixth Circuit explained.

> Even though the District and Board members knew of Ahmed's FMLA leave when she left three months prior, they took the first opportunity they had to retaliate against Ahmed. After all, they could not retaliate by placing Ahmed on leave when she was already on leave. So Ahmed's allegations that the District and Board acted at the first meaningful opportunity raise the plausible inference that they acted with retaliatory motive.

*Id*.

In this case, Defendant launched an investigation into Plaintiff's FMLA use, and while as

Defendant points out it has the right to investigate its employees' use of FMLA leave, Defendant continued to surveil her until July 5, 2024 despite having cleared her of any wrongdoing in the investigation. *See* (Doc. No. 6, ¶¶ 22, 30.) Furthermore, Plaintiff was employed by Defendant for almost two decades without issue. (Doc. No. 6, ¶ 5.) Then, on May 2, 2024, Plaintiff left work during the day after she had an unanticipated serious issue regarding her daughter that required an immediate meeting with her child and she requested and was granted use of Dependent Care Leave. (*Id.* ¶ 25.) Shortly thereafter on May 14, 2024, Plaintiff was called into a meeting and questioned regarding her recent use of FMLA leave on April 5, 2024, the May 2, 2024 use of Dependent Care Leave and 24 days of partial absences since January 1, 2024 which were all excused intermittent FMLA leave. (*Id.*, ¶ 31.) According to Plaintiff, Defendant's intent in this question was in retaliation for Plaintiff's continued proper FMLA use. (*Id.*, ¶ 32.) Then, just over a month later on July 16, 2024 Plaintiff was terminated. (*Id.*, ¶ 33.) "Plaintiff['s] grievance over her termination resulted in an Arbitrator's finding [Plaintiff] did not misuse dependent car[e] leave and overturned her termination." (*Id.*, ¶ 39.) Plaintiff's allegations that Defendant acted at the first meaningful opportunity raise the plausible inference that it acted with retaliatory motive. For this reason, this Court denies the Motion as to Plaintiff's FMLA retaliation claim.

**B. FMLA Interference**

To state a claim for FMLA interference, a plaintiff must allege:

> (1) she was an eligible employee, (2) the [defendant] was a covered employer, (3) she was entitled to take leave, (4) she gave the [defendant] notice of her intent to take leave, and (5) the [defendant] denied her FMLA benefits or interfered with her FMLA rights.

*Groening v. Glen Lake Cmty. Sch.*, 884 F.3d 626, 631 (6th Cir. 2018); *see also Hrdlicka v. GM LLC*, 63 F.4th 555, 572 (6th Cir. 2023) (quoting *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012)).

In the Motion, Defendant argues that Plaintiff failed to allege the third, fourth, and fifth elements that Defendant interfered with her FMLA rights. (Doc. No. 7, PageID# 46.) In support, it asserts (1) Plaintiff has not pled facts sufficient to show that she was entitled to FMLA leave on May 2, 2024 and (2) Defendant lacked notice that Plaintiff's request qualified for FMLA leave. (Doc. No. 7, PageID#s 46-48.) In the Opposition, Plaintiff argues that (1) she need not be qualified for leave to bring a claim for FMLA interference; (2) she gave Defendant sufficient notice that her request might qualify for FMLA leave; and (3) to the extent that her notice could be considered deficient, the emergency nature of the situation excuses the deficiency of the notice.[3] (Doc. No. 8, PageID#s 58-62.) In the Reply, Defendant reiterates its arguments as to Plaintiff's deficient notice. (Doc. No. 9, PageID#s 69-71.) This Court will address these arguments below.

This Court rejects Defendant's argument that Plaintiff's FMLA interference claim fails because she has not pled facts sufficient to show she was entitled to FMLA leave. The Sixth Circuit has held that a plaintiff's request for leave may be protected even if the court ultimately finds that she was not entitled to it. *Milman v. Fieger & Fieger, P.C.*, 58 F.4th 860, 872 (6th Cir. 2023) ("Logically, an adverse employment action in response to the exercise of (or the attempt to exercise) a statutory right—retaliation for engaging in protected activity—is a form of interference or restraint on the ability to exercise that statutory right. Constraining § 2615(a)(1) to wrongful denials of FMLA entitlements only and making § 2615(a)(2) the only avenue for recourse against adverse employment

[3] This Court rejects Plaintiff's third argument. Plaintiff asserts that "as this was an urgent situation Plaintiff was unable to give foreseeable notice." (Doc. No. 8, PageID# 5.) The FMLA accounts for cases where the circumstances giving rise to the request for leave are unforeseeable. If the basis for leave is unforeseeable, that statute still requires the employee to provide "sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." 29 C.F.R. § 825.303. "The unforeseeable-leave standard permits a plaintiff to cure a notice default by showing that she could not give notice before the absence or leave." *Koch v. Thames Healthcare Grp.*, 855 F. App'x 254, 257 (6th Cir. 2021). Thus, the FMLA does not excuse the notice requirement where the circumstances giving rise to the request for leave are unforeseeable. Rather, it permits an employee to provide this notice after the fact. Since Plaintiff does not argue that she attempted to cure the purportedly deficient notice, the Court rejects this argument.

action would ignore the plain text of § 2615(a)(1).”). Therefore, Plaintiff need not be entitled to FMLA leave to succeed on an FMLA interference claim. As the Sixth Circuit explained, “the scope of protected activity under the FMLA starts with the first step contemplated under the Act’s procedures: a request made to the employer.” *Id.* at 871. The question then is whether Plaintiff has alleged facts sufficient to show that Plaintiff’s action was grounded in a legitimate exercise of the FMLA’s procedural framework.

The FMLA entitles an employee to twelve workweeks of leave during any twelve-month period “[i]n order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition.” 29 U.S.C. § 2612 (a)(1)(C). “‘[A]n employee does not have to expressly assert his right to take leave as a right under the FMLA’ to trigger its protections.” *Milman*, 58 F.4th at 872 (quoting *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 450 (6th Cir. 1999)). “But the employee must provide enough information for the employer to know that the leave she has requested reasonably might fall under the FMLA.” *Id.* “In addition, where leave is needed to care for a family member, the employee must so indicate. *Id.* (citing *Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 826 (7th Cir. 2012); 29 C.F.R. §§ 825.302(c), 825.124(a)).[4]

Plaintiff alleges that “[o]n May 2, 2024, [she] had an unanticipated serious issue regarding her daughter that required an immediate meeting with her child.” (Doc. No. 6, ¶ 25.) “As a result, she requested and was granted use of Dependent Care Leave.” (*Id.*) As Defendant points out, Plaintiff did not provide any details as to her daughter’s condition when she made this request, but

[4] Plaintiff correctly points out that a defendant has a duty to inquire “to ascertain whether leave is potentially FMLA-qualifying.’” (Doc. No. 8, PageID# 61); *see Milman*, 58 F.4th at 872 (quoting 29 C.F.R. § 825.301(a)). However, “[t]he duty to inquire further, however, is triggered only once the employee has provided sufficient notice.” *Miles v. Nashville Elec. Serv.*, 525 F. App’x 382 (6th Cir. 2013 (citation omitted).

Defendant failed to cite to any authority that supports its position that Plaintiff failed to properly plead notice. *See* (Doc. No. 7, PageID# 47.)

Defendant is reminded that the Court is tasked with resolving a motion to dismiss as opposed to a motion for summary judgment. Defendant argues that "[t]he Sixth Circuit and its district courts have repeatedly found comparable, if not even more specific, statements were insufficient to invoke the FMLA" but therein, it references only cases involving motions for summary judgment. (Doc. No. 9, PageID#s 69-70) (collecting cases); *see also* (Doc. No. 7, PageID# 47) (citing *Ruiz-Fane v. Tharp*, 545 F. Supp. 3d 543 (N.D. Ohio 2021) (granting summary judgment).[5] Defendant has failed to cite to any authority upon which this Court could rely to find that Plaintiff has not sufficiently alleged notice. Thus, this Court denies the Motion as to Count II.

**V. Conclusion**

For the reasons set forth herein, Defendant's Motion to Dismiss the Amended Complaint (Doc. No. 7) is denied.

**IT IS SO ORDERED.**

*s/Pamela A. Barker*
PAMELA A. BARKER
U.S. DISTRICT JUDGE

Date: October 13, 2026

[5] In the Motion, Defendant does reference a case where a district court dismissed plaintiff's FMLA interference claim at the 12(b)(6) stage, but its holding is inapplicable to this one. *See* (Doc. No. 7, PageID# 47.) In *Brede v. Apple Computer*, Chief Judge Lioi dismissed the action because the plaintiff failed to state a claim for relief on the face of the Complaint. 2020 WL 377696, at *3 (N.D. Ohio Jan. 23, 2020). Therein, the plaintiff alleged a claim for FMLA interference when he requested leave to watch his sister's children as his sister was suffering from a serious health condition. *Id.* However, this request was outside the protections of the FMLA since the Act does not extend its protections to siblings experiencing a serious health condition. *Id.*